MARTIN SCHNEIDER v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

81 383
f84 260

November 16, 1900.

Nos. 12,305—(80).

### Pedestrian at Railway Crossing.

A pedestrian passing over a street at a city railway crossing is not relieved from the use of any of his faculties to discover danger, and it is his duty, if he is unable to hear warning signals, to use his eyesight, if that sense would disclose such danger; and a failure to do so must be held to display want of ordinary care on his part.

### Same—City Ordinance Requiring Flagman.

Neglect to take notice of an approaching engine on a steam railway track a person is about to cross, which could have been seen before going upon the same, cannot be excused by the failure of the railway company to comply with an ordinance requiring the maintenance of gates and a flagman at that place.

### Case Dismissed.

*Held*, upon the evidence, that the trial court properly directed a dismissal of the case upon the conclusion of plaintiff's testimony.

Action in the district court for Hennepin county by plaintiff, as

[1] Reported in 84 N. W. 124.

administrator of the estate of Martin Schneider, deceased, to recover $1,900 damages on account of the death of decedent. The case was tried before Pond, J., who at the close of plaintiff's testimony granted a motion to dismiss the action. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*F. J. Geist* and *M. C. Brady*, for appellant.

*C. W. Bunn* and *James B. Kerr*, for respondent.

LOVELY, J.

Plaintiff's intestate, Martin Schneider, while walking over defendant's tracks at a street crossing in Minneapolis, was struck by one of defendant's engines, and received such injuries therefrom that he died. His administrator brings this action to recover for the death of his intestate, upon the alleged neglect of defendant to maintain proper safeguards at the crossing, as well as for the negligent operation of the engine inflicting the injury.

Three railroad tracks cross Nineteenth street, running north and south parallel to East First street, to which they are adjacent. On the highway from Nineteenth street over First street going west there is an ordinary grade crossing, at which defendant was required by the ordinance of the city to maintain suitable gates, as well as a flagman to attend them, which ordinance had never been complied with. The day previous to the accident, defendant had placed several box cars on the east track. These cars extended into Nineteenth street on either side, leaving a space of nine feet for passage of travelers. The distance between this track and the second track west was eight feet and ten inches, in the clear. The sides of the box cars referred to extended into this space twenty-three inches, so that the distance between the cars and the second track was six feet and eleven inches. After passing the box cars going west, a pedestrian would have an unobstructed view towards the south within this space of at least three blocks.

The deceased was an aged man, seventy-four years old, presumably of fair average intelligence, possessed of good eyesight and excellent hearing. It does not appear that he was familiar with the crossing, or that he had passed over it previously, although he had often used other crossings in the same vicinity, where there were

gates and flagmen. On the occasion of the injury, which was in the daytime, he left First street to go west over that street through the opening between the box cars, and continued upon the highway until he reached the middle of the second track, where one of defendant's engines coming from the south ran upon him. He was thrown between the tracks, the engine stopping by the time it covered his body. It was then backed, he was picked up unconscious, and died soon after. The facts show also that there was a boiler shop in the locality, from which there issued considerable noise, that might easily have prevented the deceased from hearing the approaching engine. It does not appear that the engine bell was rung, although the whistle was sounded immediately previous to the collision, but for the purpose of this case it may be conceded that no signal would have been of avail.

The facts above stated were conclusively established at the trial when plaintiff rested. The defendant then moved to dismiss the action, which motion was granted. Subsequently there was an order denying a new trial, from which plaintiff appeals.

It is not an open question upon this appeal that defendant was negligent in its failure to maintain suitable gates and flagmen at the crossing as required by the city ordinance; but it is claimed, as a matter of law, that plaintiff's intestate could have readily discovered the approaching engine before going upon the track where he was struck, and is therefore precluded from recovering in this case. In support of this view it is urged that, after deceased had passed the obstructing box cars, his line of vision extended in the direction of the approaching engine a sufficient distance to have enabled him to have seen the same and avoided the collision, and we think the physical facts stated above must be held to establish this claim. After passing the box cars, a very slight movement of his head to the south would have disclosed the danger, and enabled deceased to have avoided the same; and it must follow either that deceased went forward without having looked in that direction, or that, having looked, he miscalculated the speed of the engine, and took dangerous chances in going ahead. Upon this situation it was held in an early case in this court that

"A railroad crossing over a public highway, upon the same grade, is a place of danger, and is of itself a warning to one about to go upon it to be careful and vigilant, to the extent of his opportunity, in the use of his eyes and ears, to discover an approaching train in time to avoid it; and when the vision of the traveler is so obstructed along the track that he can easily discover an approaching train, or the circumstances are such that his sense of hearing, if used, must apprise him of the same fact in time to escape it, it will be presumed, under ordinary circumstances, in case of collision, that he did not look or listen, or, if so, that he heedlessly disregarded the knowledge thus obtained. In either of these cases, as a general rule, no action can be maintained." Brown v. Milwaukee & St. P. Ry. Co., 22 Minn. 165, 167.

It follows from this rule that it is not enough for the pedestrian approaching a railroad crossing, and having full control of his motions, to depend upon the evidence of one faculty alone; and, where circumstances interfere with the use of either sense of sight or hearing, the demand is imperative that he avail himself of the other. Deceased may have been excused, in view of the noise, in not having listened; but his vision was unobstructed, and his inability to hear signals rendered it more essential for him to make the best use of his eyesight possible. The rule above stated has never been departed from in this court, but it has been applied and followed more recently in numerous cases, under which the plaintiff is clearly precluded from recovery by reason of the contributory negligence of his intestate. Carney v. Chicago, St. P., M. & O. Ry. Co., 46 Minn. 220, 48 N. W. 912; Clark v. Northern Pac. R. Co., 47 Minn. 380, 50 N. W. 365; Studley v. St. Paul & D. R. Co., 48 Minn. 249, 51 N. W. 115; Magner v. Truesdale, 53 Minn. 436, 55 N. W. 607; Judson v. Great Northern Ry. Co., 63 Minn. 248, 65 N. W. 447.

Plaintiff's counsel urge that this case may be distinguished from any of the cases above cited on the ground that deceased was an aged man; that the crossing was a city crossing; that under the rule in Hendrickson v. Great Northern Ry. Co., 49 Minn. 245, 51 N. W. 1044, every presumption is in favor of the exercise of due care by his intestate; and also that there was an implied invitation to cross the tracks, arising from the omission on the part of the defendant to maintain gates and a flagman at that place.

In answer to these claims it may be said that the age of deceased

did not relieve him from such care as he was able to exercise. It was conceded that his eyesight was good, and the fact that this was a city crossing, where the danger was greater on account of the increased number of trains passing over the tracks, was a fact which should have induced even greater caution on that account. It may well be admitted that every presumption is to be extended to the conduct of the deceased which the circumstances proved will permit, but beyond this courts cannot go, and imagine other circumstances to relieve plaintiff's intestate of the burden of that care which was required of him. The most that can be said in the application of this rule, under the evidence in this case, is that deceased was relieved from the duty of listening, on account of the noise, and also that he did look to the south as he went upon the second track, and thought that he might pass over the same in safety. We can see no other inference that can be given to his actions in this respect that would be consistent with the evidence, and giving him the benefit of such presumptions does not excuse him. If we presume that he saw the engine, and went in front of it knowingly, it was a hazard he should not have taken, and clearly indicates a want of proper care.

Upon the claim that plaintiff's intestate had a right to presume that the ordinance of the city had been complied with, and that the absence of the flagman and gates may have misled him, and amounted to an indication to him that he might cross the railway tracks in safety, it may be said that had there been gates which were open, or had a flagman been present, there would be considerable force to this contention; but the absence of either was apparent, and a plain notification of that omission to deceased, as well as a requirement that he must exercise ordinary care under the conditions then existing. The failure on the part of the railroad company to comply with the law in the respects stated does not excuse an injured party from using his sense of sight or hearing upon approaching a railway crossing, when the due use of either sense of sight or hearing would have enabled the injured party to escape the danger. Beach, Contrib. Neg. § 185.

Order affirmed.