NORRIS R. GRISWOLD v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 25, 1902.

Nos. 12,933—(46).

**Personal Injury—Contributory Negligence.**

In an action for personal injuries alleged to have been caused by the negligence of defendant, the evidence is examined, considered, and *held* to sustain the order of the trial court directing judgment for defendant notwithstanding the verdict of the jury, on the ground of contributory negligence on the part of plaintiff.

Action in the district court for Clay county to recover $15,330 for personal injuries. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $4,000. On motion, judgment was ordered for defendant notwithstanding the verdict. From a judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*A. E. Bowe* and *C. J. Thompson,* for appellant.

*C. Wellington,* for respondent.

BROWN, J.

Action to recover for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had a verdict in the court below, whereupon defendant moved the court for judgment notwithstanding the same, on the ground that it conclusively appeared from the evidence that plaintiff was guilty of contributory negligence; which motion was granted by the trial court, and plaintiff appealed.

Plaintiff was injured by a fast mail train while crossing defendant's railroad track as the same extends over First street in the village of Barnesville, this state, on August 26, 1899. The street on which plaintiff was driving with a team of horses at the time of the accident runs east and west, and the railroad track extends over the same at right angles running in a northerly direction for the distance of about forty-three hundred feet, when

[1] Reported in 90 N. W. 2.

it turns westerly. Plaintiff was engaged at the time in hauling wheat to a mill situated on said First street about two hundred fifty feet west of defendant's main track. He had delivered one load, and was returning for another, when struck by the train and injured.

When within about two hundred thirty-five feet of the crossing he looked to the north to observe whether a train was approaching from that direction, but saw none. He again looked north at a point about one hundred eighty-four feet from the crossing, when he could see up the track the distance of about four thousand feet, but saw no train approaching. He then turned his attention towards the south, not again looking to the north until he was upon the track and at about the time of the collision resulting in his injury. He had been employed by the railroad company as an engineer previous to this time at Barnesville, and knew that a train was due from the north at about the time of the accident. A full view of the track to the south was obstructed by box cars standing on a side track, but there was no train approaching from that direction. Plaintiff's team was walking slowly, about three miles an hour, but, as we have already stated, he did not look to the north again after passing the point one hundred eighty-four feet from the track. His horses were partly across the track when struck by the engine. There was nothing to distract his attention, so far as the record shows, and no reason is shown why he should have directed his whole attention to the south, conceding that he did so, when he knew that a train was due from the north at about that time; nor is any excuse shown for his failure to look towards the north, the direction from which the train came, between the point one hundred eighty-four feet from the track and before crossing the same. There was a section house to the north which obstructed his view for a short distance; but the slightest glance of the eye in that direction, at any time either before or after passing the section house, would have disclosed to him the train approaching at a very rapid rate of speed, and in ample time to have stopped his team and avoided the collision. The fact that the section house obstructed his view to the north is of no importance, however, because he does not excuse

his failure to look in that direction by reason of that obstruction. For his failure to so look the trial court held that he was guilty of contributory negligence, precluding a recovery.

We have examined the evidence with considerable care, and reach the conclusion that the trial court correctly disposed of the case, and the order appealed from must be affirmed. Time and again has this court laid down the rule, followed and applied by courts generally, that a person about to cross a railroad track must use his senses of sight and hearing and exercise every reasonable care to avoid coming into collision with an approaching train. Cases very similar to that now under consideration have been decided adversely to the injured party on the ground of contributory negligence, when it appeared, as it does here, beyond question, that the injury was the result of the failure of the injured party to look and listen, when, if he had done so, no accident would have happened. Plaintiff's negligence in this respect is best disclosed by his own testimony, and we quote from the record what he says on the subject:

"Q. You don't know how far you were from the crossing when you looked the first time? A. 235 feet. Q. Then you saw nothing at all? A. Saw nothing. Q. Then you waited until you were 184 feet from the crossing? A. Yes, sir; about that. I could see the junction from that point. Q. Then you looked again? A. Yes, sir. Q. That junction was how many feet from the crossing? A. 4,380 feet. Q. At that time you saw nothing? A. Saw nothing. Q. When did you next look north? A. I did not look north again until I was on the main line. Q. You drove that 184 feet toward this crossing without ever looking north again until you were on the main line? A. I was just about on the main line when I looked again. * * * Q. Then there was nothing, so far as you know, to distract your attention except the thought you had in your mind that the train was not on the track? A. Yes, sir; that is all. Q. You had plenty of time to look, and could have looked, if you had been a mind to? A. Yes, sir. Q. But you thought there was no train on the track and there was no need of looking there? A. Yes, sir; that is right."

Former decisions of this court are conclusive against plaintiff's right of recovery because of his contributory negligence. Several of them are squarely in point. Weyl v. Chicago, M. & St. P. Ry.

Co., 40 Minn. 350, 42 N. W. 24; Nelson v. St. Paul & D. R. Co., 76 Minn. 189, 78 N. W. 1041, 79 N. W. 530; Schmidt v. Great Northern Ry. Co., 83 Minn. 105, 85 N. W. 935; Sandberg v. St. Paul & D. R. Co., 80 Minn. 442, 83 N. W. 411; Terien v. St. Paul City Ry. Co., 70 Minn. 532, 73 N. W. 412; Olson v. Northern Pac. Ry. Co., 84 Minn. 258, 87 N. W. 843. It is not important whether defendant was chargeable with negligence in the manner of operating its train, either by running at an excessive rate of speed or failing to give the usual signals of approach; for to concede its negligence in this respect would in no way avail the plaintiff.

The case of Loucks v. Chicago, M. & St. P. Ry. Co., 31 Minn. 526, 18 N. W. 651, cited by appellant, is not in point. There was not in that case such a failure on the part of plaintiff to look and listen for an approaching train as is shown in the case at bar. Plaintiff in that case looked, as a matter of fact, and at a short distance before reaching the track and when the train was very near at hand, and because of the fact that his team became frightened and unmanageable he was unable either to stop or turn them, in consequence of which the collision occurred, and he was injured. Such is not this case. Our conclusions are in harmony with those reached by the learned trial judge, and his order in the premises is affirmed.

Judgment affirmed.