JOSEPH GREENGARD v. ST. PAUL CITY RAILWAY COMPANY.

May 9, 1898.

Nos. 10,992—(106).

| 72 | 181 |
|----|-----|
| 81 | 419 |
| 72 | 181 |
| f82 | 20 |
| 72 | 181 |
| 83 | 307 |

Street Railway—Injury to Pedestrian—Contributory Negligence.

*Held*, that the evidence conclusively shows that plaintiff, in attempting to cross two parallel street-railway tracks (at a point not a street crossing), immediately behind a moving car on the track next to him, was guilty of negligence in not exercising reasonable care to ascertain whether a car was approaching from the opposite direction on the other track.

Appeal by defendant from an order of the district court for Ramsey county, Kelly, J., denying motions for judgment notwithstanding the verdict and for a new trial, after a verdict in favor of plaintiff for $1,500. Remanded, with directions to enter judgment in favor of defendant notwithstanding the verdict.

The map referred to in opinion will be found on the following page.

*Munn & Thygeson*, for appellant.

*C. D. O'Brien*, for respondent.

MITCHELL, J.

The accident wherein plaintiff was injured occurred about eight o'clock in the evening of December 19, 1896, on Seventh street, between Locust and John streets, in the city of St. Paul, at a point from 100 to 150 feet west of the westerly line of the intersection of

Seventh and Locust streets.    The defendant had two parallel tracks on Seventh street, its west-bound cars being operated on the north track, and its east-bound cars on the south track.    The plaintiff lived and had a small store at No. 406, on the south side of Seventh street, about the middle of the block between Locust and John streets.    He had lived there about 18 months, and was entirely familiar with the situation, and knew that the cars "always run pretty fast."    He was 55 years old, and, so far as appears, was in full possession of all his faculties.

On the evening in question he went from his own store across to the north side of Seventh street, to No. 417, to get some money changed.    No. 417 is somewhat further east than plaintiff's store. Hence he crossed Seventh street diagonally.    All of this will be fully understood by reference to the map on the preceding page. On returning to his own place of business, the plaintiff followed the same route which he had taken in crossing from the south to the north.    When he was about to cross the defendant's tracks he discovered on the north track an approaching west-bound car within a few feet of the easterly line of the intersection of Seventh and Locust streets, and too near for him to attempt to cross in front of it.    He thereupon halted within a few feet (apparently three or four) of the north track, to let the car pass.    Immediately upon its passing he started across, to use his own language, "right behind" the car; and when he had reached the space between the tracks he was struck by the "shoulder" of an east-bound car on the south track, and received the injuries complained of.

The witnesses estimated the speed of the west-bound car at not less than 6 or 7 miles, and that of the east-bound car from 12 to 17 miles, an hour.    Some of the witnesses testified that they did not see any headlight on the east-bound car, but none of them were able to testify that there was none, and none of them seemed to have had their attention specially called to the matter.    They would have been much more likely to notice so unusual a thing as a car running at night without a headlight than to notice the presence of it.    Such slight negative evidence cannot overcome the positive testimony of the conductor that he lighted the headlight before he started, and that it was still burning when he completed his trip

after the accident. The inside of the east-bound car was illuminated with electric lights, except for a very few moments, when a new fuse was put in while the car was stopping at the crossing of Olive street, at least a block and a half west of the place of the accident. That part of Seventh street is approximately straight and level. Electric arc lights were suspended over it a block apart at each street crossing and were lighted at the time of the accident.

There were no obstructions to the view westward, unless it was the west-bound car. There was nothing to distract plaintiff's attention, unless it was the passing car. If he had looked west to ascertain if a car was coming from that direction, he could and would have seen the east-bound car anywhere within at least a block and a half of the place of the accident, except during the brief time when the west-bound car would obstruct his line of vision. His own witness, Kinghorn, who stood only a few feet west of him on the opposite side of Seventh street, and who had no better opportunities than plaintiff, saw the car at Olive street. Accepting the lowest speed of the west-bound and the highest speed of the east-bound car testified to by any of the witnesses, the latter must have been within a very short distance of plaintiff before the former obstructed his line of vision westward. Plaintiff testified that he looked to the west, and did not see any car coming from that direction. But it conclusively appears from the undisputed facts either that he did not look at all, or looked and saw the east-bound car, or that he did not look until the west bound car was in his line of vision, so that he could not see the other car.

Carefully examined, the testimony of the plaintiff amounts to a clear admission that the last of these hypotheses was the fact. Under a somewhat leading redirect examination, he attempted to modify this admission, but on recross-examination he virtually repeated it. The evidence, therefore, makes a case of an adult, in the full possession of all his faculties, with knowledge of the situation and the attendant risks, with ample opportunities to ascertain the approach of cars, with nothing to distract his attention, and without any necessity or even occasion for taking chances, rushing hastily across one track, at a point not a street crossing, in the immediate rear of a passing car, without knowing, or taking any reason-

able means to ascertain, whether a car was approaching from the opposite direction on the other track. If he had waited but a couple of seconds after the west-bound car passed him he could and would have discovered the approach of the other car; but, instead of doing this, he, in his haste to get back to his store, heedlessly and blindly rushed into a position of danger.

The fact that the east-bound car may not have given any signal of its approach to the John street crossing, over half a block away, does not in any way tend to excuse the plaintiff's conduct. It must also be borne in mind that this accident did not occur at a street crossing where pedestrians are to be expected, but at a place where they do not usually cross the street, and where those operating street cars are not ordinarily called upon to signal their approach. We are of opinion that the evidence of plaintiff's contributory negligence was conclusive, and as strong as, or even stronger than, the evidence in Terien v. St. Paul C. Ry. Co., 70 Minn. 532, 73 N. W. 412.

The defendant moved the court to direct a verdict in its favor, and then moved for judgment notwithstanding the verdict, pursuant to Laws 1895, c. 320. The cause is remanded, with directions to the court below to enter judgment in favor of the defendant notwithstanding the verdict.